**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

DIXIE D. MAXWELL,            )
                             )
            Plaintiff,       )
                             )
v.                           )   Case No. CIV-06-352-KEW
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social       )
Security Administration,     )
                             )
            Defendant.       )

**OPINION AND ORDER**

Plaintiff Dixie D. Maxwell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on December 15, 1955 and was 50 years old at the time of the ALJ's decision. She completed her education through the twelfth grade and a bachelor's degree. Claimant has previously worked as a public school teacher. Claimant alleges an inability to work beginning January 13, 2005, due to hypertension, stress and deep vein thrombosis, resulting in swelling in her left leg.

## Procedural History

On January 19, 2005, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially and upon

3

reconsideration. On January 26, 2006, Claimant appeared at a hearing before ALJ Lantz McClain. By decision dated March 30, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On June 30, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow her to perform a significant range of sedentary work. He also found Claimant had transferable skills from her prior skilled work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in failing to properly evaluate the opinions of Claimant's treating physician.

### Treating Physician's Opinions

Claimant challenges the ALJ's discussion and rejection of the opinions of Nabil Akkad, M.D. as Claimant's treating physician. On December 31, 2002, Claimant was admitted to Saint Edward Mercy Medical Center in Fort Smith, Arkansas and attended by Emad A Al Ghussain, M.D. for treatment for "massive deep venous thrombosis of

4

the left lower extremity." (Tr. 145). Claimant was treated with peripheral thrombolytic therapy with t-PA and Heparin in the intensive care unit. She was later prescribed Coumadin and told by Dr. Ghussain to use elastic stockings and was discharged on January 5, 2003.

On April 2, 2003, Claimant was attended by Munir Zufari, M.D. He performed a venogram procedure on Claimant's left lower extremity. He placed a self expanding stent in her left common iliac vein and three stents together in the external iliac vein. (Tr. 143).

Claimant first sought treatment from Dr. Akkad on July 30, 2003. (Tr. 159). Claimant stated she was experiencing swelling and pain in her left leg. Dr. Akkad noted mild edema in her left lower extremity. He diagnosed Claimant with chronic venous insufficiency in that limb due to recurrent deep venous thrombosis. Dr. Akkad continued Claimant on Coumadin and recommended that she continue to wear support hose. Id. Laboratory tests indicated Claimant had a high Protime level between January and November of 2004. (Tr. 166-180).

On April 7, 2004, Claimant was treated by Dr. Akkad for venous insufficiency. Dr. Akkad noted pitting edema in her left lower extremity and maintained his diagnosis of deep venous thrombosis. (Tr. 158).

On April 7, 2004, Claimant was evaluated by Robert C. Jaggers,

M.D.  He performed a venous duplex ultrasound scan on Claimant's legs.  He found chronic deep vein thrombosis in her left leg with no flow noted in the superficial femoral vein.  He did find collateral flow had been established via the greater saphenous vein system.  Dr. Jaggers also noted no thrombosis in Claimant's right leg.  (Tr. 156).

On October 22, 2004, Claimant saw Dr. Akkad, complaining of swelling in her left lower extremity, especially at the end of the day.  He noted Claimant's left leg was slightly larger than her right leg, which is indicative of chronic venous insufficiency resulting from deep vein thrombosis.  He found no pitting edema, venous ulcers or skin discoloration.  Dr. Akkad advised Claimant to continue current treatment of Coumadin and compression stockings.  (Tr. 155).

On April 22, 2005, Claimant presented to Dr. Akkad for a follow-up examination of her deep vein thrombosis.  Claimant denied any new symptoms or any pain in her left leg.  She reported mild swelling in her left leg compared to her right.  Dr. Akkad found no pitting edema.  He recommended that Claimant not stand long hours on her feet or sit for long hours.  (Tr. 181).

In his decision, the ALJ recognizes Dr. Akkad's treatment of Claimant's condition.  He recognized examinations of Claimant by Dr. Akkad on July 30, 2003, April 7, 2004, and October 22, 2004 and his treatment of Coumadin and use of support hose.  (Tr. 16).  He

also recognized Claimant's visit to Dr. Akkad and the conclusions from that visit in April of 2005. (Tr. 17). The ALJ also concluded that Dr. Akkad's treatment notes "fail to demonstrate the presence of any impairment or combination of impairments which would prevent claimant from performing sedentary work." (Tr. 19).

Claimant alleges the ALJ failed to give Dr. Akkad's opinion controlling weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Nothing contained in the ALJ's decision reflects that he either rejected Dr. Akkad's diagnoses or gave his opinions anything less than controlling weight. Indeed, the ALJ relied upon the findings of Dr. Akkad in the body of his decision. Claimant's primary argument to the contrary surrounds the alleged failure of the ALJ to consider the comment made in Dr. Akkad's April 22, 2005 report wherein he states "I told Ms. Maxwell there is nothing at this point I can offer her other than continued anticoagulation and

7

keep from standing long hours on her feet or sitting for long hours." (Tr. 181). Claimant contends, by finding Claimant could perform a range of sedentary work, the ALJ necessarily did not consider this statement in Dr. Akkad's report and, therefore, did not give his opinions controlling weight.

"Sedentary work" is defined in the applicable regulations as involving

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

"Occasionally" has been defined as "occurring from very little up to one-third of the time, and would generally total no more than 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." Social Security Ruling 96-9p, 1996 WL 374185, 3. Dr. Akkad's rather unspecific recommendation to Claimant to not stand or sit "long hours" is not in conflict with the ALJ's determination. As pointed out by the ALJ in his decision, Claimant testified that she sat for two to three hours at a time doing needlepoint, reading, crocheting, and watching television. She also fed and watered her dogs and washed out dog pens for one to one and one-half hours at a time. Claimant also cleans house for one and one-half hours to two hours at a time. (Tr. 18). Admittedly, Claimant also testified she took breaks and elevated

her leg during the course of the day.  However, nothing in the regulations or explanatory notes for establishing the requirements for sedentary work prevents occasional suspension of sitting and standing.  In short, the ALJ did not reject Dr. Akkad's opinions, afford them inferior weight, or ultimately make findings in his decision contrary to the treating physician's diagnosis or recommendations.  Therefore, the ALJ's decision should be affirmed.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED** for the reasons set forth in this Order.

DATED this 3rd day of October, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE